**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

NORMAN STALLINGS,

    Plaintiff,

    v.

SEMGROUP CORPORATION, THOMAS R. MCDANIEL,
KARL F. KURZ, RONALD A. BALLSCHMIEDE,
JAMES H. LYTAL, SARAH M. BARPOULIS,
WILLIAM J. MCADAM, and CARLIN G. CONNER,

    Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

---

Plaintiff Norman Stallings ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.     This is an action against SemGroup Corporation ("SemGroup" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between SemGroup and

Energy Transfer LP ("Parent") and Nautilus Merger Sub LLC ("Merger Sub," and together with Parent, "Energy Transfer").[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as Defendant(s) conduct substantial business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of SemGroup common stock ("common stock").

7. Defendant SemGroup provides gathering, transportation, storage, distribution, marketing, and other midstream services for producers, refiners of petroleum products, and other market participants. SemGroup is incorporated in Delaware and primarily operates its crude oil

---

[1] Merger Sub is a wholly-owned subsidiary of Energy Transfer.

business in Colorado, among other states. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "SEMG."

8.  Defendant Thomas R. McDaniel ("McDaniel") is the Chairman of the Board of the Company.

9.  Defendant Karl F. Kurz ("Kurz") is a director of the Company.

10. Defendant Ronald A. Ballschmiede ("Ballschmiede") is a director of the Company.

11. Defendant James H. Lytal ("Lytal") is a director of the Company.

12. Defendant Sarah M. Barpoulis ("Barpoulis") is a director of the Company.

13. Defendant William J. McAdam ("McAdam") is a director of the Company.

14. Defendant Carlin G. Conner ("Conner") is President, Chief Executive Officer, and a director of the Company.

15. Defendants McDaniel, Kurz, Ballschmiede, Lytal, Barpoulis, McAdam, and Conner are collectively referred to herein as the "Individual Defendants."

16. Defendants SemGroup and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

17. Energy Transfer provides energy-related services. Energy Transfer is incorporated in Delaware with principal executive offices located in Dallas, Texas. Energy Transfer maintains operations in Colorado. Energy Transfer's common units trade on the NYSE under the ticker symbol, "ET."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On September 16, 2019, Energy Transfer issued a press release announcing that it

had entered into a definitive merger agreement whereby it would acquire SemGroup in a unit and cash transaction. Under the terms of the agreement, SemGroup shareholders would receive $6.80 in cash and 0.7275 of an Energy Transfer common unit for each share of Class A Common Stock of SemGroup owned. The press release states, in pertinent part:

**Energy Transfer to Acquire SemGroup in $5 Billion Transaction**

- **Enhances export opportunities via two premier U.S. Gulf Coast Terminals**
- **New pipeline to directly connect Houston Ship Channel to Nederland Terminal**
- **Enhances midstream infrastructure with increased connectivity**
- **Increases crude oil and natural gas liquids ("NGLs") focused infrastructure**
- **Immediately accretive to Distributable Cash Flow ("DCF") per unit**
- **No material impact on credit metrics**
- **Complementary assets drive more than $170 million of annual run-rate synergies**

September 16, 2019 07:30 AM Eastern Daylight Time

DALLAS--(BUSINESS WIRE)--Energy Transfer LP (NYSE: ET) ("ET" or "Energy Transfer") today announced that it has entered into a definitive merger agreement whereby Energy Transfer will acquire SemGroup Corporation (NYSE: SEMG) ("SemGroup") in a unit and cash transaction valued at $17 per share, or a total consideration including the assumption of debt of approximately $5 billion, based on the closing price of ET common units on September 13, 2019.

The merger consideration consists of $6.80 in cash and 0.7275 of an ET common unit for each outstanding share of Class A Common Stock of SemGroup, or 40% cash and 60% equity. This represents a 65% premium to the closing price of SemGroup shares as of September 13, 2019. The transaction is expected to close in late 2019 or early 2020, subject to the approval by SemGroup's stockholders and other customary regulatory approvals. Upon the closing, SemGroup stockholders are expected to own approximately 2.2% of Energy Transfer's outstanding common units.

\*   \*   \*

**Advisors**

BofA Merrill Lynch acted as exclusive financial advisor to Energy Transfer and Latham & Watkins LLP acted as legal counsel. Jefferies LLC acted as exclusive financial advisor to SemGroup and Kirkland & Ellis LLP acted as legal counsel.

**About Energy Transfer**

Energy Transfer LP (NYSE: ET) owns and operates one of the largest and most diversified portfolios of energy assets in the United States, with a strategic footprint in all of the major domestic production basins. ET is a publicly traded limited partnership with core operations that include complementary natural gas midstream, intrastate and interstate transportation and storage assets; crude oil, NGL and refined product transportation and terminalling assets; NGL fractionation; and various acquisition and marketing assets. ET, through its ownership of Energy Transfer Operating, L.P., also owns Lake Charles LNG Company, as well as the general partner interests, the incentive distribution rights and 28.5 million common units of Sunoco LP (NYSE: SUN), and the general partner interests and 46.1 million common units of USA Compression Partners, LP (NYSE: USAC). For more information, visit the Energy Transfer LP website at www.energytransfer.com.

**About SemGroup**

SemGroup® Corporation (NYSE: SEMG) moves energy across North America through a network of pipelines, processing plants, refinery-connected storage facilities and deep-water marine terminals with import and export capabilities. SemGroup serves as a versatile connection between upstream oil and gas producers and downstream refiners and end users. Key areas of operation and growth include western Canada, the Mid-Continent and the Gulf Coast. SemGroup is committed to safe, environmentally sound operations. Headquartered in Tulsa, Oklahoma, the company has additional offices in Calgary, Alberta; Denver, Colorado; and Houston, Texas. For more information, visit the SemGroup website at www.semgroup.com.

19. On October 30, 2019, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20. The Proxy Statement, which recommends that SemGroup shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) SemGroup's and Energy Transfer's financial projections; (ii) the financial analyses performed by SemGroup's financial advisor, Jefferies LLC ("Jefferies"), in connection with its fairness

5

opinion; (iii) conflicts of interest involving Jefferies; and (iv) the sales process leading up to the Proposed Transaction.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the SemGroup Board of Directors and Reasons for the Merger; (iii) SemGroup Unaudited Prospective Financial Information; and (iv) Opinion of SemGroup's Financial Advisor.

22. The shareholder vote on the Proposed Transaction is currently set for December 4, 2019. Plaintiff may seek to enjoin the shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, SemGroup shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning SemGroup's and Energy Transfer's Financial Projections**

23. The Proxy Statement omits material information concerning SemGroup's and Energy Transfer's financial projections.

24. The Proxy Statement states that Jefferies "reviewed certain information furnished to Jefferies by the management of SemGroup and Energy Transfer, including financial forecasts and estimates and analyses provided by the management of SemGroup and Energy Transfer, relating to the business, operations and prospects of each of SemGroup and Energy Transfer, respectively."

25. The Proxy Statement provides a "table present[ing] [SemGroup's] selected

unaudited prospective financial data for the fiscal years ending 2018 through 2022" (the "SemGroup Projections").

26. The Proxy Statement, however, fails to disclose the following concerning the SemGroup Projections: (1) all line items used to calculate (i) Adjusted EBITDA, and (ii) Cash Available for Dividends; and (2) a reconciliation of all non-GAAP to GAAP metrics.

27. The Proxy Statement fails to disclose any of Energy Transfer's financial projections which were provided to Jefferies in connection with its fairness opinion and analyses.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

29. The disclosure of SemGroup's and Energy Transfer's projected financial information is material because it would provide SemGroup shareholders with a basis to project SemGroup's future financial performance and would allow shareholders to better understand the

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited October 31, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

financial analyses performed by Jefferies in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by SemGroup and its financial advisor, SemGroup shareholders are unable to determine how much weight, if any, to place on Jefferies' fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. Accordingly, in order to cure the materially misleading nature of the SemGroup Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SemGroup shareholders.

### 2. Material Omissions Concerning Jefferies' Financial Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Jefferies.

33. The Proxy Statement fails to disclose the following concerning Jefferies' "*Discounted Cash Flow Analysis*": (1) the distributable cash flow of Energy Transfer from calendar year 2020 through calendar year 2024, and all underlying line items thereto; (2) all line items used to calculate the cash available for dividends of SemGroup; and (3) the individual inputs and assumptions underlying the (i) discount rates of 10.77% and 9.77% with respect to SemGroup and of 10.15% and 9.15% with respect to Energy Transfer, and (ii) terminal yield values of 12.50% and 11.50% with respect to SemGroup and of 8.50% and 7.50% with respect to Energy Transfer.

34. The Proxy Statement fails to disclose the individual multiples and financial metrics

of each of the selected transactions and companies utilized by Jefferies in its "*Selected Public Companies Analysis*" and "*Selected Transactions Analysis*[.]"

35. The valuation methods, underlying assumptions, and key inputs used by Jefferies in rendering its purported fairness opinion must be fairly disclosed to SemGroup shareholders. The description of Jefferies' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, SemGroup shareholders are unable to fully understand Jefferies' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SemGroup shareholders.

**3. Material Omissions Concerning Jefferies' Actual Conflicts of Interest**

36. The Proxy Statement omits material information concerning Jefferies' conflicts of interest.

37. The Proxy Statement provides that, "[o]n September 13, 2019, the SemGroup board of directors convened telephonically to discuss the status of the market check process as well as the definitive documentation with Energy Transfer. Representatives of Jefferies . . . disclosed de minimis conflicts of both Jefferies and members of the deal team, which the SemGroup board of directors determined to be immaterial both individually and in the aggregate."

38. The Proxy Statement, however, fails to disclose the specific nature of the conflicts of interest affecting both Jefferies and the "members of the deal team[.]"

39. Disclosure of a financial advisor's conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's conflicts

9

of interest may inform shareholders on how much weight to place on that analysis.

40. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to SemGroup shareholders.

### 4. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction

41. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

42. The Proxy Statement states that, "[o]n September 11, 2019 . . . Company A proposed a transaction that would involve the contribution by SemGroup of most of its crude oil related assets, including the Houston Fuel Oil Terminal Company assets, in exchange for 50% ownership in a newly formed joint venture and cash. These terms reflected a lower ownership percentage and less cash than had been previously proposed by Company A."

43. The Proxy Statement, however, fails to disclose the terms and values of Company A's September 11, 2019 proposal, as well as all prior proposals.

44. This information is material because if SemGroup were to enter into the proposed joint venture with Company A instead of the Proposed Transaction, SemGroup shareholders would be able to retain their stock and voting rights. By contrast, if the Proposed Transaction is consummated, "SemGroup common stockholders will own approximately 2.2% of the outstanding ET common units after the merger." And Energy Transfer unitholders "are not entitled to elect the directors of Energy Transfer's general partner . . . [and] have only limited voting rights on matters affecting Energy Transfer's business." By Defendants' own admission, the Proposed Transaction would result in "SemGroup common stockholders [having] less influence on the management and policies of Energy Transfer than they have now on the management and policies of SemGroup."

Thus, this information is material to SemGroup shareholders.

45. Defendants began to speak on this subject by revealing that "SemGroup received indications of interest from Company D for $12.00 per share, Company E for $14.25 per share, Company F for $13.50 to $15.00 per share, Company G for $15.00 per share, and Energy Transfer for an aggregate value of $17.00 per share[.]" Therefore, Defendants must disclose the terms and values of Company A's proposals.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SemGroup shareholders

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

50. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 31, 2019  Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*